1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Lucas E. Gilmore, Bar No. 250893
Reed Kathrein, Bar No. 139304
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
Email:  lucasg@hbsslaw.com
            reed@hbsslaw.com

*Attorneys for Plaintiff Lee Michael Thompson*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

LEE MICHAEL THOMPSON,
Individually and on behalf of all others
similarly situated,

Plaintiffs,

v.

LUNA INNOVATIONS
INCORPORATED, SCOTT A.
GRAEFF, EUGENE J. NESTRO, and
GEORGE GOMEZ-QUINTERO,

Defendants.

Case No. 2:24-cv-04068

**CLASS ACTION COMPLAINT
FOR THE VIOLATIONS OF THE
FEDERAL SECURITIES LAWS**

CLASS ACTION

JURY TRIAL DEMANDED

# TABLE OF CONTENTS

**Page**

I.  NATURE OF THE ACTION .................................................................. 1

II.  JURISDICTION AND VENUE .......................................................... 1

III.  PARTIES ............................................................................................ 2

IV.  SUBSTANTIVE ALLEGATIONS ..................................................... 3

  A.  Materially False and Misleading Statements Issued
      During the Class Period ............................................................ 3

V.  THE TRUTH BEGINS TO EMERGE ................................................ 6

VI.  POST-CLASS PERIOD REVELATIONS ........................................ 12

VII.  PLAINTIFF'S CLASS ACTION ALLEGATIONS ......................... 13

COUNT I FOR VIOLATIONS OF SECTION 10(B) AND RULE
  10B-5 PROMULGATED THEREUNDER ................................... 16

COUNT II VIOLATIONS OF SECTION 20(A) OF THE
  EXCHANGE ACT ......................................................................... 18

VIII.  PRAYER FOR RELIEF ................................................................... 19

IX.  JURY TRIAL DEMANDED ............................................................ 19

1     Plaintiff Lee Michael Thompson ("Plaintiff"), individually and on behalf of

2   all other persons similarly situated, by Plaintiff's undersigned attorneys, for

3   Plaintiff's complaint against Defendants (defined below), alleges the following

4   based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and

5   information and belief as to all other matters, based upon, among other things, the

6   investigation conducted by and through Plaintiff's attorneys, which included,

7   among other things, a review of the Defendants' public documents, public filings,

8   wire and press releases published by and regarding Luna Innovations Incorporated

9   ("Luna Innovations" or the "Company"), and information readily obtainable on the

10   Internet. Plaintiff believes that substantial evidentiary support will exist for the

11   allegations set forth herein after a reasonable opportunity for discovery.

## I.     NATURE OF THE ACTION

12

13     1.     This is a class action on behalf of persons or entities who purchased or

14   otherwise acquired publicly traded Luna Innovations securities between May 16,

15   2022 and April 19, 2024, inclusive (the "Class Period"). Plaintiff seeks to recover

16   compensable damages caused by Defendants' violations of the federal securities

17   laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## II.     JURISDICTION AND VENUE

18

19     2.     The claims asserted herein arise under and pursuant to Sections 10(b)

20   and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5

21   promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

22     3.     This Court has jurisdiction over the subject matter of this action

23   pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C.

24   § 78aa).

25     4.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)

26   and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged

27   misstatements entered and the subsequent damages took place in this judicial

28   district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## III.   PARTIES

6. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Luna Innovations securities during the Class Period and was economically damaged thereby.

7. Defendant Luna Innovations is a technology company that is focused on fiber optics. It creates products targeted towards the aerospace, automotive, and communications industries, among others.

8. Luna Innovations is incorporated in Delaware and its principal executive offices are located at 301 1st Street, SW, Suite 200, Roanoke, VA 24011. The Company's common stock trades on the NASDAQ exchange under the ticker symbol "LUNA."

9. Defendant Scott A. Graeff ("Graeff") served as the Company's Chief Executive Officer ("CEO") and President from prior to the Class Period until March 25, 2024.

10. Defendant Eugene J. Nestro ("Nestro") served as the Company's Chief Financial Officer ("CFO") from prior to the Class Period until October 16, 2023.

11. Defendant George Gomez-Quintero ("Gomez-Quintero") has served as the Company's CFO since October 17, 2023.

12. Defendants Graeff, Nestro, and Gomez-Quintero are collectively referred to herein as the "Individual Defendants."

13. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b)    was directly involved in the day-to-day operations of the Company at the highest levels;

(c)    was privy to confidential proprietary information concerning the Company and its business and operations;

(d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)    approved or ratified these statements in violation of the federal securities laws.

14.    The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Luna Innovations under *respondeat superior* and agency principles.

16.    Defendant Luna Innovations and the Individual Defendants are collectively referred to herein as "Defendants."

## IV.    SUBSTANTIVE ALLEGATIONS

**A.    Materially False and Misleading Statements Issued During the Class Period**

17.    The Class Period begins on May 16, 2022, when Luna filed its financial statements on Form 10-Q for the quarter ended March 31, 2022 (the

-3-

"1Q22 Report"). The Company reported revenues of about $22.48 million and net income of about $9.58 million for the quarter. The 1Q22 Report attached Sarbanes-Oxley certifications by Defendants Graef and Nestro assuring investors that "this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report." The certifications also assured investors that Luna's disclosure controls and procedures and internal control over financial reporting "provide[s] reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles[.]" The 1Q22 Report separately assured investors that the Company's disclosure controls and procedures are "effective."

18.    On August 12, 2022, Luna filed its financial statements on Form 10-Q for the quarter ended June 30, 2022 (the "2Q22 Report"). The Company reported revenues of about $26.12 million and a net loss of about $2.35 million for the quarter. The 2Q22 Report attached Sarbanes-Oxley certifications by Defendants Graef and Nestro assuring investors of the same matters as alleged in paragraph 17 above. Similarly, the 2Q22 Report further separately assured investors that the Company's disclosure controls and procedures are "effective."

19.    On November 10, 2022, Luna filed its financial statements on Form 10-Q for the quarter ended September 30, 2022 (the "3Q22 Report"). The Company reported revenues of about $29.15 million and net income of about $1.19 million for the quarter. The 3Q22 Report attached Sarbanes-Oxley certifications by Defendants Graef and Nestro assuring investors of the same matters as alleged in paragraph 17 above. Similarly, the 3Q22 Report separately assured investors that the Company's disclosure controls and procedures are "effective."

20.    On March 16, 2023, Luna filed its financial statements on Form 10-K for the year ended December 31, 2022 (the "FY22 Report"). The Company reported

-4-

revenues of about $109.49 million and net income of about $9.28 million for the year. The FY22 Report attached Sarbanes-Oxley certifications by Defendants Graef and Nestro assuring investors of the same matters as alleged in paragraph 17 above. Similarly, the FY22 Report separately assured investors that the Company's disclosure controls and procedures are "effective."

21.     On May 9, 2023, Luna filed its financial statements on Form 10-Q for the quarter ended March 31, 2023 (the "1Q23 Report"). The Company reported revenues of about $25.04 million and a net loss of about $1.84 million for the quarter. The Q123 Report attached Sarbanes-Oxley certifications by Defendants Graef and Nestro assuring investors of the same matters as alleged in paragraph 17 above. Similarly, the 1Q23 Report separately assured investors that the Company's disclosure controls and procedures are "effective."

22.     On August 10, 2023, Luna filed its financial statements on Form 10-Q for the quarter ended June 30, 2023 (the "2Q23 Report"). The Company reported revenues of about $29.16 million and a net loss of about $1.59 million for the quarter. The 2Q23 Report attached Sarbanes-Oxley certifications by Defendants Graef and Nestro assuring investors of the same matters as alleged in paragraph 17 above. Similarly, the 2Q23 Report separately assured investors that the Company's disclosure controls and procedures are "effective."

23.     On November 14, 2023, Luna filed its financial statements on Form 10-Q for the quarter ended September 30, 2023 (the "3Q23 Report"). The Company reported revenues of about $30.7 million and net income of about $461 thousand for the quarter. The 3Q23 Report attached Sarbanes-Oxley certifications by Defendants Graef and Gomez-Quintero assuring investors of the same matters as alleged in paragraph 17 above. Similarly, the 3Q23 separately assured investors that the Company's disclosure controls and procedures are "effective."

24.     The statements alleged in paragraphs 17-23 above were all materially false and misleading because they omitted to disclose that: (1) Luna's 1Q – 3Q22,

FY22, and 1Q – 3Q23 Reports contained unearned revenues that should not have been recognized; (2) Luna would need to restate financial statements that it filed during May 16, 2022 through and including November 14, 2023; (3) Luna's disclosure controls and procedures did not provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles; (4) Luna's disclosure controls and procedures were not effective; and (5) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all times.

## V.     THE TRUTH BEGINS TO EMERGE

25.     On March 12, 2024, after the market closed, Luna Innovations filed with the SEC a current report on Form 8-K announcing it would need to restate its financial statements for the second and third quarters of 2023 (the "First Restatement Announcement") because the Company improperly recognized revenues during these periods.

26.     The First Restatement Announcement stated the following:

A Special Committee of the Board of Directors (the "Board") of Luna Innovations Incorporated (the "Company") is conducting an independent review, with the assistance of external legal and financial advisors, *of certain transactions for which revenue was recognized in the second and third quarters of 2023 that did not qualify for revenue recognition under U.S. generally accepted accounting principles*. The Special Committee is examining the circumstances surrounding these issues and is evaluating, among other things, the Company's disclosure controls and internal control over financial reporting and whether changes in accounting policies or other policies are necessary.

While the independent review is ongoing, on March 12, 2024, the Audit Committee (the "Audit Committee") of the Board, *based on preliminary findings of the review, and after consultation with, the Company's management and the Special Committee's external legal and financial advisors, concluded that the Company's previously issued unaudited interim condensed consolidated financial statements for the quarters ended June 30, 2023, and September 30, 2023*, as previously filed with the Securities and Exchange Commission (the "SEC"), *should no longer be relied upon and should be restated*.

-6-

*In connection with the independent review, the Company has identified material weaknesses in its internal control over financial reporting that existed as of June 30, 2023, and September 30, 2023, and has re-evaluated the effectiveness of the Company's disclosure controls and procedures as of those dates.* Based on this assessment, the Company's disclosure controls and procedures were ineffective for the quarters ended June 30, 2023, and September 30, 2023. The Company is continuing to evaluate its internal control over financial reporting and will report its remediation plan and further information regarding the material weaknesses when it reports its restated results for the affected periods.

As the independent review remains ongoing, the Company has not yet determined the full extent of the impact on the second and third quarters of 2023 and whether and to what extent there may be an impact on financial statements for any other periods.

The Company's management and the Audit Committee have discussed the matters disclosed in this current report on Form 8-K with Ernst & Young LLP, the Company's independent registered public accounting firm.

(Emphasis added).

27.   Also on March 12, 2024, after the market closed, the Company filed with the SEC a late filing notice on Form NT 10-K (the "Late Filing Notice"). The Late Filing Notice stated the following:

Luna Innovations Incorporated (the "Company") is filing this Notification of Late Filing on Form 12b-25 with respect to its Annual Report on Form 10-K for the fiscal year ended December 31, 2023 (the "Form 10-K"). ***The Company is unable to file the Form 10-K within the prescribed time period without unreasonable effort or expense.***

As announced on March 12, 2024, a Special Committee of the Company's Board of Directors (the "Special Committee") is conducting an independent review, with the assistance of external legal and financial advisors, ***of certain transactions for which revenue was recognized in the second and third quarters of 2023 that did not qualify for revenue recognition under U.S. generally accepted accounting principles.*** The Special Committee is examining the circumstances surrounding these issues and is evaluating, among other things, the Company's disclosure controls and internal control over financial reporting and whether changes in accounting policies or other policies are necessary. The Company currently anticipates reporting material weaknesses in internal controls related to evaluating customer

-7-

arrangements for proper revenue recognition and other controls and will be working to remediate these issues.

Additional time is needed to complete tasks and steps necessary to prepare and finalize the Company's annual financial statements and other disclosures required to be included in the Form 10-K, as well as to complete the ongoing review of recognition of revenue. There can be no assurance as to how long the review will take or when the Company will be able to complete the preparation and filing of the Form 10-K. However, the Company currently does not expect to file the Form 10-K within the extension period of fifteen calendar days provided under Rule 12b-25 under the Securities Exchange Act of 1934, as amended. In addition, the review is ongoing and the Company has not yet determined the full extent of the impact on the second and third quarters of 2023 and whether and to what extent there may be an impact on financial statements for any other periods.

(Emphasis added).

28.     On this news, the price of Luna Innovations stock fell $2.24 per share, or 35.78%, to close at $4.02 on March 13, 2024.

29.     Then, on March 25, 2024, after the market closed, the Company filed with the SEC a current report on Form 8-K (the "March 25 Form 8-K") which announced that Defendant Graeff had retired, effective immediately. Upon information and belief, Defendant Graeff retired as a result of the misconduct detailed in this complaint. The March 25 Form 8-K stated the following:

*Retirement of Scott Graeff as President and Chief Executive Officer and as a Board Member*

On March 24, 2024, **Scott Graeff retired as the President and Chief Executive Officer of the Company and as a member of the Board, effective immediately**. After consideration of various alternatives, including termination with or without cause, **the Board exercised its discretion in determining that it was in the best interests of the Company and its stockholders to accept Mr. Graeff's retirement and provide benefits to Mr. Graeff in exchange for his continued assistance and compliance with other obligations as set forth in a separation agreement** (the "Separation Agreement"), which the Company and Mr. Graeff entered into on March 24, 2024 (the "Separation Date").

Subject to Mr. Graeff's release of claims and his compliance with the Separation Agreement and his continuing obligations to the Company under his employment agreement and Confidential Information, Inventions Assignment, Non-competition and Non-Solicitation Agreement, the Company has agreed to provide Mr. Graeff with the following severance benefits: (a) severance payments in the form of continuation of his base salary for a period of nine months following the Separation Date, payable in accordance with the Company's normal payroll practices, (b) payment of his COBRA premium, if applicable, for up to nine months, and (c) accelerated vesting of 10,000 shares underlying Mr. Graeff's unvested RSUs. The remainder of Mr. Graeff's unvested equity awards were forfeited as of the Separation Date.

The Separation Agreement also contains certain covenants that are binding upon Mr. Graeff, **including a covenant to cooperate with the Company in connection with any investigation of any claims or demands asserted against it and with respect to matters arising from events that occurred during his period of employment with the Company**. Mr. Graeff also agreed to refrain from taking certain actions regarding the Company and its management and stockholders in light of Mr. Graeff's status as a holder of the Company's common stock. The Separation Agreement also contains a release of claims in favor of the Company, subject to customary exceptions, and mutual covenants not to disparage, subject to certain exceptions. In addition, the Separation Agreement contains clawback provisions pursuant to which, in addition to any required clawback under applicable law or listing requirements and the Company's clawback policies, 100% of all cash severance payments and accelerated RSUs provided to Mr. Graeff under the Separation Agreement are subject to clawback upon (a) the Board's determination, in its reasonable good faith discretion, that Mr. Graeff engaged in conduct that constituted "Cause" under his employment agreement, (b) the Board's determination, in its reasonable good faith discretion, that Mr. Graeff materially breached his continued obligations to the Company, or (c) a finding by a court that Mr. Graeff engaged in bad faith conduct.

(Emphasis added).

30.     On this news, the price of Luna Innovations stock fell by $0.41 per share, or 11.54%, to close at $3.14 on March 26, 2024.

31.     On April 19, 2024, Luna filed its Form 8-K which announced that, in addition to non-reliance on its 2Q23 and 3Q23 Reports, investors should no longer rely on its previously filed financial statements contained in its 1Q22, 2Q22, 3Q22,

FY22, and 1Q23 Reports (the "Second Restatement Announcement") because the Company improperly recognized revenues in each of these Reports too.

32.    The Second Restatement Announcement stated the following:

As previously reported in the Current Report on Form 8-K (the "Initial 8-K") filed by Luna Innovations Incorporated (the "Company") with the Securities and Exchange Commission (the "SEC") on March 12, 2024, a Special Committee (the "Special Committee") of the Board of Directors (the "Board") of the Company has been conducting an independent review, with the assistance of external legal and financial advisors, of certain revenue recognition matters in connection with the Company's previously issued financial statements. As disclosed in the Initial 8-K, the Audit Committee (the "Audit Committee") of the Board, based on preliminary findings of the review, and after consultation with the Company's management and the Special Committee's external legal and financial advisors, concluded that the Company's previously issued interim unaudited condensed consolidated financial statements for the quarters ended June 30, 2023 and September 30, 2023 (the "Q2 and Q3 2023 Financial Statements"), as previously filed with the SEC, should no longer be relied upon and should be restated due to the recognition of revenue with respect to certain transactions in those periods that did not qualify for revenue recognition under U.S. generally accepted accounting principles.

While the independent review is continuing, on April 15, 2024, the Audit Committee, based on additional preliminary findings of the review, and after consultation with the Company's management and the Special Committee's external legal and financial advisors, concluded that the Company's previously issued audited consolidated financial statements as of and for the year ended December 31, 2022 (the "2022 Annual Financial Statements"), as well as the Company's previously issued interim unaudited condensed consolidated financial statements as of and for each of the three months ended March 31, 2022, the three and six months ended June 30, 2022 and the three and nine months ended September 30, 2022 (collectively, the "2022 Interim Financial Statements" and, together with the 2022 Annual Financial Statements, the "2022 Financial Statements") as well as the interim unaudited condensed consolidated financial statements as of and for the three months ended March 31, 2023 (together with the Q2 and Q3 2023 Financial Statements and the 2022 Financial Statements, the "Affected Financial Statements"), should no longer be relied upon and should be restated due to identified accounting errors in each of the Affected Financial Statements relating to revenue recognition. Similarly, any previously issued or filed reports, press releases, earnings releases, investor presentations or other communications of the Company describing the Company's financial results or other financial

information relating to the periods covered by the Affected Financial Statements should no longer be relied upon. In addition, the report of Ernst & Young LLP included in the previously issued 2022 Annual Financial Statements should no longer be relied upon.

In addition, the Company is assessing the effect of the matters identified to date on the Company's internal control over financial reporting and its disclosure controls and procedures. In connection with the review and the identification of the accounting errors described in this report, the Audit Committee identified material weaknesses in the Company's internal control over financial reporting that existed during the periods covered by each of the Affected Financial Statements, and has re-evaluated the effectiveness of the Company's disclosure controls and procedures as of each quarter end included in the Affected Financial Statements (the "Affected Balance Sheet Dates"). Based on this assessment, the Audit Committee has determined that the Company's disclosure controls and procedures were ineffective as of each of the Affected Balance Sheet Dates. The Audit Committee has also concluded that, based on its determination that the Company's internal control over financial reporting was not effective as of December 31, 2022, Management's Report on Internal Control over Financial Reporting included in the Company's Annual Report on Form 10-K for the year ended December 31, 2022 should no longer be relied upon.

The description of the restatements and accounting errors in this report is preliminary, unaudited and subject to further change in connection with the ongoing review and the completion of the restatements of the Affected Financial Statements. Additionally, as the independent review remains ongoing, the Company has not yet determined the full extent of the impact on the Affected Financial Statements and whether and to what extent there may be an impact on financial statements for any other periods. Accordingly, there can be no assurance as to the actual effects of the restatements or that the Company will not determine to restate any financial statements in addition to the Affected Financial Statements or with respect to any additional accounting errors.

Although the Company cannot at this time estimate when it will file its restated financial statements, the Company is diligently pursuing completion of the restatements and intends to make such filings as soon as reasonably practicable following the completion of the review and the restatements.

The Company's management and the Audit Committee have discussed the matters disclosed in this Item 4.02 with the Company's independent registered public accounting firm, Ernst & Young LLP.

33.     This news drove the price of Luna shares down $0.36 (12.8%) during the two trading days ended April 22, 2024.

34.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## VI.     POST-CLASS PERIOD REVELATIONS

35.     On May 1, 2024, Luna announced that on April 26, 2024 its Board of Directors "approved the termination of the employment of Brian Soller, the Chief Technology Officer and Executive Vice President of Corporate Development of the Company, for cause, effective as of May 1, 2024."

36.     In addition, Luna revealed that "[o]n April 29, 2024, George Gomez-Quintero, the Chief Financial Officer of the Company, notified the Company of his resignation, effective May 1, 2024[]" and "[i]n connection with his resignation, Mr. Gomez-Quintero is not entitled to receive any severance or other benefits upon his separation from the Company."

37.     With respect to former CEO Scott Graeff, Luna also disclosed that his conduct triggered certain clawback provisions in his separation agreement:

> As previously disclosed, the Company entered into an Agreement with Scott Graeff, the Company's former President and Chief Executive Officer, on March 24, 2024 (the "Graeff Separation Agreement"). Pursuant to the Graeff Separation Agreement, all cash severance payments under the Graeff Separation Agreement and all shares underlying the restricted stock units that were accelerated pursuant to the Graeff Separation Agreement were subject to recoupment or immediate forfeiture by the Company upon a written determination in the reasonable, good faith discretion of the Board that Mr. Graeff engaged in conduct that constituted "Cause" under Mr. Graeff's employment agreement.  On April 26, 2024, the Board determined that Mr. Graeff engaged in conduct that constituted Cause and the Company will cancel all future severance payments and Mr. Graeff will forfeit all shares underlying the accelerated vesting of the 10,000 restricted stock units under the Graeff Separation Agreement.

38.     In addition, Luna said "[o]n May 1, 2024, in connection with the previously announced independent review of the Company's historical financial

-12-

statements being undertaken by a special committee of the Board, in addition to the other personnel actions described in this report, the Company terminated the employment of seven additional employees, effective immediately."

39.     Lastly, Luna disclosed that its Board "will consider a wide range of options for the Company including, among other things, a potential sale, merger or other strategic transaction."

## VII.   PLAINTIFF'S CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than Defendants who acquired the Company's securities publicly traded on NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

41.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

42.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

43.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

44.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;
- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;
- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false filings;
- whether the prices of the Company securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

45.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

46.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- the Company's shares met the requirements for listing, and were listed and actively traded on NASDAQ, an efficient market;
- as a public issuer, the Company filed periodic public reports;
- the Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;
- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period; and
- the Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

47.     Based on the foregoing, the market for the Company's securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

48.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against All Defendants

49.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50.     This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

51.     During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

52.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

53.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially

participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

54.     Individual Defendants, who are the senior officers of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or any other of the Company's personnel to members of the investing public, including Plaintiff and the Class.

55.     As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

56.     Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

57.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

58.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's securities during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

59.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's false financial statements.

61.     As officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's' financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

62.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act.

In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

63.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## VIII.  PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)    declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel;

(b)    awarding damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, together with interest thereon;

(c)    awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## IX.    JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

1   Dated: May 15, 2024

2

3

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

4   By /s/ *Lucas E. Gilmore*

5        Lucas E. Gilmore, Bar No. 250893
     Reed Kathrein, Bar No. 139304

6   HAGENS BERMAN SOBOL SHAPIRO LLP
     715 Hearst Avenue, Suite 300

7   Berkeley, CA  94710

8   Telephone: (510) 725-3000
     Facsimile:  (510) 725-3001

9   Email:   lucasg@hbsslaw.com

10             reed@hbsslaw.com

11   *Counsel for Plaintiff Lee Michael Thompson*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28